**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NAH-FEE HINTON, | : | |
| *Plaintiff*, | : | |
| | : | CASE NO. 3:25-CV-1642 (KAD) |
| v. | : | |
| | : | |
| ROBERT GREENE, JR., | : | |
| *Defendant*. | : | MAY 14, 2026 |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge:

Nah-Fee Hinton ("Plaintiff"), a former federal inmate previously in the custody of the Bureau of Prisons ("BOP"),[1] filed this Complaint *pro se*, bringing a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*") against Defendant Dr. Robert Greene, Jr. ("Greene"), a doctor at Federal Correctional Institution Danbury ("FCI Danbury"). Plaintiff alleges that Defendant Greene was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment while he was incarcerated at FCI Danbury. For the reasons that follow, and pursuant to 28 U.S.C. § 1915, the Court concludes that the Complaint must be **DISMISSED without prejudice**.

**Allegations**

The Court does not set forth all the facts alleged in the Complaint. Instead, it summarizes Plaintiff's basic factual allegations only to give context to its ruling below.

At all times relevant to this action, Plaintiff suffered from "chronic respiratory and lung[] infections, including chronic Bronchitis, asthma, and recurring infection." Compl., ECF No. 1 at

---

[1] Plaintiff was a federal inmate when he filed his Complaint on October 1, 2025. *See* Compl., ECF No. 1. The Court may take judicial notice of the BOP's inmate locator website. *See United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020). The BOP inmate locator shows that Plaintiff is no longer in the custody of the BOP as of March 2, 2026. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 11, 2026).

¶ 6.  Plaintiff claims that his medical history and condition were known to the medical staff at FCI Danbury.  *Id*.

On March 7, 2024, while Plaintiff was still imprisoned at FCI Danbury, he began to experience "a severe flare-up of his condition, including symptoms such as difficulty breathing, persistent coughing, chest pain and fever."  *Id*. at ¶ 7.  Plaintiff submitted multiple requests for medical attention to the medical staff and Defendant Greene, but his requests were ignored and delayed for two months.  *Id*. at ¶ 8.

On June 11, 2024, Plaintiff was finally seen by medical staff at FCI Danbury, but he was given an ineffective over-the-counter medication.  *Id*. at ¶ 9.  Despite Plaintiff's "worsening symptoms and repeated pleas for proper treatment," "the defendants" refused to order a chest x-ray, withheld a prescribed inhaler, and delayed an outside consultation with a pulmonologist.  *Id*. at ¶ 10.

Plaintiff claims that Defendant Greene and his medical staff were allegedly aware of Plaintiff's "serious medical condition and the inadequate care being provided through grievances, direct contact with medical staff, and numerous filed sick call request slips."  *Id*. at ¶ 11.  Plaintiff claims that as direct result of Defendant Greene and his medical staff's deliberate indifference, his respiratory condition at the time he filed his Complaint had "deteriorated significantly."  *Id*. at ¶ 12. Plaintiff further claims that his outside doctors have diagnosed his untreated injuries as "permanent lung damage," and he has required hospitalization.  *Id*.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(a)–(b). In doing so, the Court must assume the truth of the allegations and interpret them liberally to "raise

the strongest arguments [they] suggest[].” *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Discussion**

The Complaint specifies that Plaintiff seeks *Bivens* relief for Defendant’s alleged failure to provide adequate medical care for Plaintiff’s “chronic respiratory and lung[] infection,” beginning on March 7, 2024.  Compl. at ¶¶ 6-12.  To state a claim for relief under *Bivens*, Plaintiff must allege facts plausibly showing that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution.  *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).  Not all constitutional violations give rise to a damages remedy under *Bivens*.  Indeed, the Supreme Court has recognized a remedy for damages in only three contexts: (1) a Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)).  *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

To determine whether Plaintiff’s claim may proceed under *Bivens*, the Court must conduct a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022).  The first step asks “whether the case presents ‘a new *Bivens* context’—*i.e.*, is it ‘meaningful[ly]’ different from the three cases in which

the Court has implied a damages action." *Id.* (quoting *Abbasi*, 582 U.S. at 139). If a case arises in a "new *Bivens* context," the Court proceeds to the second step, where it considers "whether there are any special factors that counsel hesitation about granting the extension" of *Bivens* into a new context. *Hernández v. Mesa*, 589 U.S. 93, 102 (2020) (cleaned up).

"Courts considering medical claims filed under *Bivens* have routinely found variances in circumstances and severity [that] render deliberate indifference claim[s] different from *Carlson* and thus aris[ing] in a 'new context.'" *Churuk v. Canarozzi*, No. 3:22-CV-1395 (VDO), 2024 WL 2149036, at *10 (D. Conn. Apr. 2, 2024) (internal quotation mark omitted). But for purposes of initial review, the "circumstances and severity" of the harm alleged here is sufficiently similar to that in *Carlson* such that Plaintiff's claim does not arise in a new *Bivens* context. *See id.* at **10–11 (denying defendant's motion to dismiss *Bivens* claim asserting "that defendants Greene and Escobar were deliberately indifferent to [plaintiff's] medical needs when they failed to restore his prescription for Gabapentin," finding that "this claim strongly resembles the claim in *Carlson*" because "[p]laintiff is claiming deliberate indifference to medical needs by medical providers"). Accordingly, the Court now considers whether Plaintiff's allegations are sufficient to state an Eighth Amendment deliberate indifference claim.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to serious medical needs, the prisoner must allege facts satisfying two components, one objective and one subjective. *See id.*

The objective component requires the prisoner to demonstrate that the alleged deprivation of medical care was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The prisoner must show that he was "actually deprived of adequate

medical care" by an official's failure "to take reasonable measures in response to a sufficiently serious medical condition." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). This objective showing in turn requires the Court to make two inquiries. First, the Court must determine whether the inmate was "actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner." *Id.* at 280. This examination is necessarily contextual and fact-specific, and differs based on whether the issue involves a failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–186 (2d Cir. 2003).

"[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citing *Smith*, 316 F.3d at 185–86). Deciding whether a condition is sufficiently serious requires courts to consider whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). If treatment is given but the inmate alleges it is inadequate, "the seriousness inquiry is narrower." *Id.* Courts then focus on the "inadequacy itself." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018)

(summary order). If "the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the prisoner's *underlying medical condition* alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original); *see also Robbs v. McCrystal*, No. 3:20-CV-1584 (MEG), 2023 WL 2526533, at *9 (D. Conn. Mar. 15, 2023).

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law." *Smith*, 316 F.3d at 184 (quoting *Chance*, 143 F.3d at 702); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citing *Hathaway*, 99 F.3d at 553). Indeed, "[a] plaintiff cannot establish a claim of deliberate indifference on a theory that the defendant failed to take some available alternative or additional diagnostic techniques or forms of treatment when the defendant's decision is based on sound medical judgment." *Clark v. Quiros*, 693 F. Supp. 3d 254, 286 (D. Conn. 2023), *rev'd and remanded sub nom. on other grounds by Clark v. Valletta*, 157 F.4th 201 (2d Cir. 2025); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (noting that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . ."). Further, a patient's disagreement over the treatment provided does not rise to the

6

level of deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citing *Chance*, 143 F.3d at 703).

The Court assumes for purposes of initial review that Plaintiff's chronic and respiratory lung infections were a sufficiently serious medical need, and thus Plaintiff has satisfied the objective component. *See Smith*, 316 F.3d at 185. Plaintiff, however, has not met the subjective component of his deliberate indifference claim.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, as under *Bivens*, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Turner v. Dellapia*, 498 F. Supp. 3d 500, 513 (S.D.N.Y. 2020) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)) (internal quotation marks omitted); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983"). This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Plaintiff broadly alleges that Defendant Greene and his medical staff—through grievances, direct contact between Plaintiff and medical staff, and numerous sick call requests— were aware of Plaintiff's serious medical conditions and inadequate care. But these allegations do not suffice to plausibly plead that Defendant Greene himself was deliberately indifferent to Plaintiff's medical needs. Indeed, the "receipt of letters or grievances, by itself, does not amount to personal involvement." *Brown v. Laino*, No. 24-CV-6677, 2025 WL 3228035, at *9 (S.D.N.Y. Nov. 19, 2025) (citation omitted); *see also Dorlette v. City of Stamford*, No. 3:23-CV-1589 (OAW), 2025

7

WL 2076036, at *2 (D. Conn. July 23, 2025).  And regardless, Plaintiff does not allege that Defendant Greene actually received his grievances and sick call requests and still failed to take any action for two months while aware of the substantial risk such inaction would cause to Plaintiff.  Nor does Plaintiff specify with whom he had direct contact or whether that direct contact was with Defendant Greene.

Plaintiff also alleges that after the two-month delay, he *was* seen by medical staff at FCI Danbury for his chronic and respiratory lung infections, but that he was given ineffective medication. Compl. at ¶ 9.  He further alleges that despite his worsening symptoms, "defendants" refused to provide additional care and delayed an outside consultation with a pulmonologist.  *Id*. at ¶ 10. Plaintiff's references to "defendants" are insufficient.  *See Turner*, 498 F. Supp. 3d at 513. Moreover, these allegations do not demonstrate Defendant Greene's personal involvement in Plaintiff's treatment, much less in any constitutional violation.  It is also utterly unclear from the Complaint whether Defendant Greene was aware of Plaintiff's worsening condition and was the individual who allegedly refused to provide Plaintiff with additional medical care.  It is therefore axiomatic that Plaintiff has not plausibly alleged the *mens rea* component of his Eighth Amendment claim against Defendant Greene.

Accordingly, Plaintiff's Eighth Amendment claim against Defendant Greene is dismissed under 28 U.S.C. § 1915A(b)(1).

**Conclusion**

For all of the foregoing reasons, the Complaint is **DISMISSED without prejudice**.  If Plaintiff wishes to replead his claim against Defendant Greene, he may file an Amended Complaint on or before **June 15, 2026.**  The Amended Complaint must address the deficiencies identified herein.  Any Amended Complaint, if filed, will completely replace the Complaint, and the Court will

not consider any allegations made in the original Complaint when evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process. If an Amended Complaint is not timely filed, the Clerk of Court is directed to close this case on June 16, 2026.

   **SO ORDERED** at Bridgeport, Connecticut, this 14th day of May 2026.

            */s/ Kari A. Dooley*
            KARI A. DOOLEY
            UNITED STATES DISTRICT JUDGE

9